UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JORGE ALBERTO FARIAS,<br><br>    Plaintiff,<br><br>    v.<br><br>C. LOPEZ, et al.,<br><br>    Defendants. | Case No. 21-cv-04167-BLF<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING EXHAUSTION**<br><br>[Re: ECF No. 41] |

Plaintiff Jorge Alberto Farias, a state prisoner, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against prison staff at the Salinas Valley State Prison ("SVSP"). ECF No. 1. After screening the complaint, the Court found cognizable claims against Defendants C. Lopez, Jose Gutierrez-Aparicio, P. Barrera-Negrete, A. Cortina, and D. Ear (collectively "Defendants"). ECF Nos. 11, 12. Later, the Court granted Defendants' motion to bifurcate summary judgment motions, allowing Defendants to raise exhaustion in the first motion and, if denied, additional defenses in the second. ECF No. 35. Before the Court is the first of Defendants' summary judgment motions. ECF No. 41 ("Mot."). Farias, now with counsel, filed an opposition. ECF No. 43 ("Opp."). Defendants filed a reply. ECF No. 44 ("Reply").

After careful review of the briefs and evidence, the Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 41.

**I.   BACKGROUND**

Farias is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). ECF No. 1 at 1. He was, at all times relevant to the present case, incarcerated at SVSP. *Id.* Farias is a participant in the Developmental Disability Program ("DDP") at the DD1 level of care. ECF No. 1 ("Compl.") at 7.

1    Farias alleges that on August 22, 2020, Lopez, Gutierrez-Aparicio, and Barrera-Negrete came to his cell and ordered him to exit for a random cell search. *Id.* After an exchange between Farias and the officers, the accounts of which differ between Farias's complaint and the CDCR rules violation report, a physical altercation ensued with Lopez, Gutierrez-Aparicio, and Barrera-Negrete using OC spray and later batons to subdue Farias. *Compare* Compl. at 8 (alleging that Farias had trouble understanding instructions and requested a sergeant, a request that Lopez refused before deploying OC spray), *with* ECF No. 41-1 at 12 (describing Farias as refusing the cell search and striking Lopez before the officers deployed OC spray and grabbing Barrera-Negrete before the officers deployed batons). The search of Farias's cell revealed an inmate-manufactured weapon and a cellular phone. Farias received rules violations reports for both pieces of contraband. ECF No. 41-1at 16, 21.

Farias was sent to the administrative segregation unit ("ASU") later that day. Compl. at 11. While in the ASU, Farias requested to be accommodated with a cellmate "to assist him with the grievance pertaining to the use of excessive force and other legal and writing assistance." *Id.* Cortina and Ear told him that he could only have a cellmate who is also a participate of the DDP. *Id.* With the help of another inmate housed a few cells away, Plaintiff filed a Reasonable Accommodation Request (CDCR Form 1824), requesting the following: "To stop being discriminated because of Plaintiff's disabilities and be allowed to have a cellmate that is not DDP." *Id.* On December 23, 2020, his requests were approved. *Id.* With the help of a new cellmate, Plaintiff filed an inmate grievance (CDCR Form 602) on February 10, 2021. *Id.* at 12. On February 16, 2021, the grievance was rejected because it was not submitted within 30 days of the incident. *Id.* Farias claims that because he was discriminated against by the ASU staff, his right to file a grievance and right of access to the court was violated by Cortina and Ear. Farias claims he appealed the grievance, and the Office of Appeal completed their review on May 3, 2021. *Id.*

After screening Farias's complaint, the Court found that it stated the following cognizable claims: (1) excessive force against Lopez, Gutierrez-Aparicio, and Barrera-Negrete; (2) violation of his due process right of access to the courts against Cortina and Ear; and (3) ADA claims

2

against Lopez, Gutierrez-Aparicio, Barrera-Negrete, Cortina, and Ear.  ECF Nos. 11, 12.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense.  *See* Fed. R. Civ. P. advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*, 133 F.Supp.3d 1228, 1232 (N.D. Cal. 2015).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.*W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  If the nonmoving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in

3

affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

**III.   DISCUSSION**

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). An action must be dismissed unless the prisoner exhausted his available administrative remedies before he or she filed suit. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed). The PLRA requires "proper exhaustion" of available administrative remedies, which includes compliance with administrative deadlines. *See Woodford*, 548 U.S. at 93–96.

Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. *Jones v. Bock*, 549 U.S. 199, 217–18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. The CDCR provides its inmates and parolees the right to "submit a written grievance . . . to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15 § 3481(a) (2020). Under the regulations in effect at the time of the alleged violations, an inmate was required to "submit a claim within 30 calendar days of discovering an

4

adverse policy, decision, action, condition, or omission by the Department." *Id.* § 3482(b). "Discovery occurs when a claimant knew or should have reasonably known of the adverse policy, decision, action, condition, or omission." *Id.* The written grievance must be submitted on an official CDCR Form 602. *Id.* § 3482(b)(1).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215–17. Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172; *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust). Once the defendant has carried that burden, the prisoner has the burden of production. *Id.* That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id.*

Defendants argue that summary judgment should be granted in their favor because Farias failed to exhaust his claims. They argue that Farias had 30 days to file a written grievance on a CDCR Form 602, and that Farias did not file a grievance related to his excessive force claim against Lopez, Gutierrez-Aparicio, and Barrera-Negrete until 174 days later. Mot. at 6–7. Defendants also argue that Farias never filed a grievance related to his claims against Cortina and Ear. *Id.* at 7. In the alternative, Defendants request an *Albino* hearing. *Id.* at 8. Farias raises

5

several arguments in response. First, he argues that the regulations in effect at the time allowed him 180 days to file a grievance. Opp. at 4–5. Second, Farias argues that due to his disability, he did not discover that he had a grievance to file until January 25, 2021, when he was housed with an inmate that could explain the grievance process to him. *Id.* at 6. Third, Farias argues that administrative remedies were "effectively unavailable" to him because of his housing in the ASU. *Id.* at 7–8. Finally, Farias argues that exhaustion is not required. *Id.* at 8–9. Farias also requests additional time to supplement the record or, in the alternative, that the Court hold an *Albino* hearing. *Id.* at 3.

### A.    Request for Time to Supplement the Record or for an *Albino* Hearing

The Court will begin by addressing Farias's request for additional time to supplement the record and both parties' requests for an *Albino* hearing. Farias requests "additional time to supplement the record with additional facts (disputed/undisputed) as would relate to this motion by way of declaration/affidavit from the plaintiff himself. Due to the relatively short briefing timeframe, he would not be able to coordinate or obtain such evidence in time for the opposition." Opp. at 3. In the alternative, Farias requests an *Albino* hearing. *Id.* Similarly, Defendants request that, in the alternative to ruling in their favor, the Court should hold an *Albino* hearing. Mot. at 8.

The Court will construe Farias's request to supplement the record as a motion pursuant to Fed. R. Civ. P. 56(d). Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party seeking additional discovery also must demonstrate that he or she acted diligently to pursue discovery in the past. *See id.* Farias has failed to meet his burden under Rule 56(d). Farias did not file an affidavit or declaration that explains why he cannot present facts essential to justify its opposition. Moreover, Farias fails to argue why a declaration or affidavit from Farias himself would prevent summary

6

1  judgment or identify any facts that would support such an assertion.  Finally, Farias has made no
2  representation about whether he acted diligently to pursue discovery in the past.  Because Farias
3  has failed to meet his burden to justify relief under Rule 56(d), the Court will deny Farias's
4  request for additional time to supplement the record.

5        The Court also finds that an *Albino* hearing is unnecessary.  An *Albino* hearing is required
6  if the Court finds any genuine dispute of material fact.  747 F.3d at 1166.  As will be described
7  below, the Court does not find a genuine dispute of material fact, so an *Albino* hearing is not
8  required in this case.

9        **B.**    **Timeliness of Farias's CDCR Form 602 Grievance**

10        The Court next concludes that Farias's grievance for his excessive force claim was
11  untimely.  The parties agree that Farias filed a CDCR Form 602 for his excessive force claim 174
12  days after the events underlying the grievance.  *See* Mot. at 7; Opp. at 5.  Farias argues that his
13  grievance was timely because he had 180 days to file his grievance under the regulations in
14  combination with two extensions of the period by California Executive Order.  Opp. at 4–5.
15  However, Farias incorrectly states that the regulations permitted him 60 days to file a written
16  grievance.  *See* Opp. at 4.  Although the 2022 revision of title 15 gives inmates 60 days to file a
17  written grievance, the regulations in effect at the time of the alleged violations gave inmates only
18  30 days.  *Compare* Cal. Code Regs. tit. 15 § 3482(b) (2020), *with* Cal. Code Regs. tit. 15
19  § 3482(b) (2022).  Similarly, Farias argues that California Executive Orders N-40-20 and N-66-20
20  extended the period in which he could file a grievance by a total of 120 days.  Opp. at 4–5.
21  However, these executive orders extended only specific statutory and regulatory deadlines, and
22  neither executive order applies to the deadlines for inmate grievances under title 15.  Thus,
23  Farias's grievance was untimely because the regulations in effect required him to file a CDCR
24  Form 602 within 30 days of the event.

25        Farias argues that the period in which he was required to file a CDCR Form 602 did not
26  begin to run until January 25, 2021—the date on which he became aware that he could file a
27  grievance, and thus "discovered" that he had a grievance to file.  Opp. at 6.  Farias's evidence
28  creates a dispute of fact regarding whether he was aware of his ability to file a grievance.  *See* ECF

1   No. 43 at 15 (declaration of Farias's cellmate stating that "[Farias] said he had no idea how to [file
2   a grievance]"). However, Farias's knowledge of his ability to file a grievance is not material to
3   "discovery" under the regulations. The regulations make clear that "[d]iscovery occurs when a
4   claimant knew or should have reasonably known of the *adverse policy, decision, action, condition,*
5   *or omission*[,]" not the claimant's ability to file a grievance. *See* Cal. Code Regs. tit. 15 § 3482(b)
6   (emphasis added). Farias does not suggest that he was unaware of the alleged excessive force
7   incident when it occurred. Thus, the period in which Farias should have filed a grievance began to
8   run on August 22, 2020, when the "adverse . . . action" at issue occurred.

### C. Whether Administrative Remedies Were Effectively Unavailable

Because Farias's CDCR Form 602 with respect to his excessive force claim was untimely and the evidence demonstrates that Farias did not file a CDCR Form 602 for his other claims, *see* ECF No. 41-3 ¶ 20, the Court next considers whether administrative remedies were effectively unavailable to Farias. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (alteration in original). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* (quoting *Booth*, 532 U.S., at 737–38). The Supreme Court has identified three circumstances in which a remedy is effectively unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Defendants have pointed to evidence showing that DDP officers were available to assist Farias in the 30-day period following August 22, 2020. *See* ECF No. 41-2 ("Luna Decl.") ¶¶ 3–4, 6 (noting that DDP officer Luna interacted with Farias frequently between August and September 2020 and "would have assisted him" to file a CDCR Form 602); *see also* ECF No. 41-1 at 9–10

8

1 (Farias testifying in a deposition that DDP officers visit inmates when they are in the ASU). In
2 addition, Defendants' evidence shows that Farias was educated on the procedure for filing a
3 CDCR Form 602 and had done so in the past. *See* ECF No. 41-1 at 26 (records indicating that
4 Farias was informed about the new procedure for filing grievances on July 22, 2020 and that
5 Farias indicated understanding by reiterating what was explained, asking appropriate questions,
6 and providing responses to questions); *see also* Luna Decl. ¶ 5 ("Prior to the August 22, 2020
7 incident I assisted Farias with many forms, including CDCR Form 602 grievances.").

8 Farias argues that administrative remedies were unavailable to him because he was
9 rehoused in the ASU and "deprived of the usual accoutrements." Opp. at 8. Farias appears to be
10 referring to the allegation in his complaint that Cortina and Ear denied his request for a cellmate
11 that could "assist him with the grievance pertaining to the use of excessive force and other legal
12 and writing assistance." Compl. at 11. However, Farias fails to point to any evidence that would
13 create a genuine dispute of material fact as to whether the procedure for filing a grievance was
14 effectively unavailable. He points only to his cellmate's declaration stating that "[Farias] said he
15 had no idea how to [file a grievance]." *See* ECF No. 43 at 15. Considering the evidence in the
16 light most favorable to Farias, this evidence creates a factual dispute with respect to whether
17 Farias was aware of how to file a CDCR Form 602, but it does not create a dispute of *material* fact
18 because it does not show that the grievance process is a "dead end," that the process is "so
19 opaque" that it is incapable of use, or that prison administrators thwarted him from taking
20 advantage of the grievance procedure. Indeed, Farias presents no evidence to contest the facts that
21 Officer Luna was available to help Farias file a CDCR Form 602 during the period in which he
22 was required to file one and that Officer Luna had helped Farias do so prior to August 22, 2020.
23 Luna Decl. ¶¶ 3–5.

24 Because no material facts are in dispute and the record when viewed in the light most
25 favorable to Farias shows that the process for filing a Form 602 grievance was available to him,
26 the Court finds that Farias failed to exhaust administrative remedies.

27 **D.     Whether the Court Has Discretion to Excuse a Failure to Exhaust**
28 Finally, the Court considers whether it may exercise its discretion to excuse Farias's failure

9

to exhaust. The Supreme Court has made clear that exhaustion under the PLRA is mandatory and *not* left to the discretion of the district court. *See Woodford*, 548 U.S. at 85. The PLRA's "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Ross*, 578 U.S. at 639. As such, "unexhausted claims *cannot* be brought in court." *Jones*, 549 U.S. at 211 (emphasis added). Although Farias argues that the Court has discretion to excuse a failure to exhaust, Opp. at 8–9, the cases on which Farias relies are inapposite because they do not address exhaustion under the PLRA, but rather exhaustion under the Administrative Procedure Act and the Immigration and Naturalization Act. *See Clouser v. Espy*, 42 F.3d 1522, 1532 (9th Cir. 1995); *Rashtabadi v. I.N.S.*, 23 F.3d 1562, 1567 (9th Cir. 1994). Thus, the Court finds no legal basis by which it may exercise discretion to excuse Farias's failure to exhaust administrative remedies under the PLRA.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment Regarding Exhaustion (ECF No. 41) is GRANTED.

Dated: October 2, 2023

_____
BETH LABSON FREEMAN
United States District Judge

10